BLADY WORKFORCE LAW GROUP LLP
I. BENJAMIN BLADY — Cal. Bar No. 162470
5757 Wilshire Boulevard, Suite 535
Los Angeles, CA 90036
Phone: (323) 933-1352
Email: bblady@bwlawgroup.com

LESCHES LAW
LEVI LESCHES — Cal. Bar No. 305173
5757 Wilshire Boulevard, Suite 535
Los Angeles, CA 90036
Phone: (323) 900-0580
Email: levi@lescheslaw.com

ATTORNEYS FOR
Plaintiff Michelle RIOS

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Michelle RIOS,<br><br>          Plaintiff,<br><br>     v.<br><br>POMONA VALLEY HOSPITAL MEDICAL CENTER a California nonprofit corporation; Anitha REDDI, an individual; LEIGH CORNELL, an individual; and Does 1 through 20, inclusive;<br><br>          Defendants. | **COMPLAINT FOR:**<br><br>(**1**) **FAMILY AND MEDICAL LEAVE ACT RETALIATION** (**29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(a)(1)**);<br><br>(**2**) **CALIFORNIA FAMILY RIGHTS ACT RETALIATION** (**CAL. *GOV'T CODE* § 12945.2(a)**);<br><br>(**3**) **UNLAWFUL RETALIATION** (**CAL. *LAB. CODE,* § 1102.5**); |

COMPLAINT FOR DAMAGES — JURY TRIAL DEMANDED

(4)  BREACH OF CONTRACT;

(5)  FAILURE TO ACCOMMODATE (CAL. *GOV'T CODE*, § 12940(m));

(6)  FAILURE TO ACCOMMODATE (42 U.S.C. § 12117(a));

(7)  FAILURE TO ACCOMMODATE IN VIOLATION OF THE REHABILITATION ACT (29 U.S.C. §§ 793–794);

(8)  FAILURE TO TIMELY ENGAGE IN GOOD FAITH IN THE INTERACTIVE PROCESS (29 C.F.R. §§ 1630 *et seq.*);

(9)  FAILURE TO TIMELY ENGAGE IN GOOD FAITH IN THE INTERACTIVE PROCESS (CAL. *GOV'T CODE*, § 12940(m));

(10) FAILURE TO TIMELY ENGAGE IN GOOD FAITH IN THE INTERACTIVE PROCESS IN VIOLATION OF THE REHABILITATION ACT (29 U.S.C. §§ 793–794);

(11) FAILURE TO PREVENT HARASSMENT, DISCRIMINATION, AND/OR RETALIATION (CAL. *GOV'T CODE*, § 12940(k));

(**12**)**CALIFORNIA UNFAIR COMPETITION LAW** (*CAL. BUS & PROF CODE*, §§ **17200**)

**JURY TRIAL DEMANDED**

Plaintiff Michelle RIOS, demanding a jury trial on all counts, alleges:

## JURISDICTION & VENUE

1.     **Plaintiff RIOS ("RIOS")**, at all times relevant herein, was a resident, domiciliary, and citizen of California, with her primary place of residence in Los Angeles County.

2.     **Defendant POMONA VALLEY HOSPITAL MEDICAL CENTER ("PVHMC")** is a not-for-profit corporation organized under the laws of the State of California, with its principal mailing address located at 1798 North

Garey Avenue Pomona CA 91767, as identified through Defendant PVHMC's filings with the California Secretary of State.

3.   **Defendant ANITHA REDDI ("REDDI")** is an individual that, on information and belief, is believed to be a resident, domiciliary, and citizen of Los Angeles County, California.

4.   **Defendant LEIGH CORNELL ("CORNELL")** is an individual that, on information and belief, is believed to be a resident, domiciliary, and citizen of Los Angeles County, California.

5.   Federal jurisdiction over this action arises pursuant to section 1331 of title 28 of the *United States Code*, as Plaintiff raises claims under federal statutes and regulations, including 29 U.S.C. § 2615(a)(1); 29 U.S.C. §§ 793–794; 42 U.S.C. § 12117(a), and other federal statutes and regulations.

6.   Supplemental jurisdiction over Plaintiff's state-law causes of action arises pursuant to section 1367 of title 28 of the *United States Code*, as Plaintiff's state-law causes of action all form part of the same case and controversy as the facts and claims raised under the above-enumerated federal statutes and regulations.

7.   Because "part of the events or omissions giving rise to the claim" occurred in the Central District for the State of California, venue in this Court is appropriate pursuant to subdivision (b)(2) of section 1391 of title 28 of the *United States Code*.

8.   Defendants are subject to personal jurisdiction in this district and state because they are domiciled therein.

9.   Plaintiff has, within the time prescribed by law, obtained a "right-to-sue" letter from the California Department of Fair Employment and Housing.

<u>**GENERAL ALLEGATIONS**</u>

10.     This suit arises from the disability-motivated animus, discrimination, and harassment suffered by Plaintiff during her employment for Defendant PVHMC.

11.     Plaintiff RIOS is an employee of Defendant PVHMC.

12.     Plaintiff RIOS is a conscientious employee that regularly received positive reviews as well as numerous thank-you notes and gifts from patients.

13.     In August 2017, Plaintiff went out on pre-scheduled paid vacation for the birth of her first granddaughter.

14.     Immediately upon Plaintiff's return, Plaintiff's immediate manager, Defendant REDDI, summoned Plaintiff into her office and made false accusations that Plaintiff had made mistakes in patient registrations. Defendant REDDI informed Plaintiffs that she planned to give a written warning against Plaintiff without following the pre-warning counseling procedures that the Hospital ordinarily utilized.

15.     Plaintiff informed Defendant REDDI that the latter's accusations were baseless and Plaintiff challenged Defendant REDDI to show a single record in the Hospital's file system corroborating Defendant's accusations. Defendant REDDI was unable to do so.

16.     Plaintiff had been employed for more than six years with PVHMC, with positive performance reviews, and was progressing towards seniority status and was also entitled to significant medical benefits.  Plaintiff feared that she would have difficulty finding employment elsewhere due to her disabilities.  Plaintiff was so concerned by Defendant REDDI's libel, that Plaintiff requested a meeting with for a meeting with an administrative vice president, Defendant CORNELL.  CORNELL scheduled a meeting for the following day.

17.     At that meeting, Plaintiff notified Defendant CORNELL that

COMPLAINT FOR DAMAGES

Plaintiff had a disabling condition, and that the disabling condition was stress-sensitive and could flare up because of stress.  CORNELL expressed sympathy and expressed that she was familiar with the disabling condition as some of CORNELL'S personal acquaintances had the same condition.

18.   CORNELL informed Plaintiff that she would look into the issue and then get back to Plaintiff.  Plaintiff left the meeting feeling encouraged.

19.   In violation of "STEP 2" of the "Grievance Procedure" provided for in PVHMC's Associate Handbook, CORNELL never followed up with Plaintiff. Plaintiff received no follow up from CORNELL, whether written, verbal, or otherwise.

20.   Immediately after Plaintiff's meeting with CORNELL, Defendant REDDI's demeanor towards Plaintiff entirely changed.   After that time, Defendant REDDI would jab her finger in Plaintiff's face when speaking to Plaintiff and Defendant REDDI would repeatedly yell at Plaintiff in front of her co-workers.   Plaintiff never witnessed Defendant REDDI yell at any other worker at the Oncology Hematology department, other than on one other instance.   Defendant REDDI ceased greeting Plaintiff, stopped addressing Plaintiff by name, and began cutting Plaintiff off when Plaintiff attempted speaking in department meetings.

21.   Defendants' conduct informed Plaintiff that Plaintiff could not engage in protective activity, and that attempting to engage in protected activity would only be punished.  Plaintiff had attempted informing Defendant PVHMC that she had a disability that was being aggravated, and Plaintiff received no assistance, no follow-up, no investigation, but only harassment and retribution.

22.   Shortly thereafter, Plaintiff suffered extreme and life-threatening medical condition that, on information and belief, were caused directly by

Defendants REDDI's harassment and the extreme stress that was caused thereby. As a result of this extreme and life-threatening medical condition, Plaintiff had to take four-month FMLA leave.

23. Immediately upon Plaintiff's return, on the first day of Plaintiff's work, Defendant REDDI cruelly and manipulatively changed Plaintiff's job to the most difficult and labor-intensive position that Plaintiff was qualified to perform within that department. Defendant REDDI did so despite REDDI's actual knowledge of the seriousness and gravity of the medical condition that Plaintiff was returning from. Plaintiff already knew that complaining would not result in any remedial changes but would only set off further harassment and retribution.

24. In December 2018, Plaintiff took FMLA leave for necessary surgery. Plaintiff provided three-weeks' notice prior to the surgery.

25. Consistent with Defendant REDDI's practice and pattern of retaliating against Plaintiff for taking leave, Defendant REDDI humiliated and singled Plaintiff out prior to Plaintiff's going out on leave.

26. Immediately upon Plaintiff's return, on the first day of Plaintiff's work, Defendant REDDI took away Plaintiff's earlier lunch break and forced Plaintiff to accept a later lunch break. Defendant REDDI told Plaintiff: "I cannot stop you from taking your 10-minute breaks, but you need to go to the bathroom during your breaks." Defendant REDDI told Plaintiff she would need to turn in daily reports, which was something Plaintiff had never been required to do before her leave. Defendant REDDI would helicopter over Plaintiff and berate Plaintiff in a manner that made it clear that Plaintiff was being singled out for such treatment. The stress was incredible, and aggravated Plaintiff's disabling condition.

27. In March 2019, Defendant REDDI summoned Plaintiff to a

meeting wherein Defendant REDDI began making false and fabricated accusations against Plaintiff, in a manner that further aggravated Plaintiff's disabling condition to the extent that Plaintiff was physically unable to walk the next day. Plaintiff's recorded blood-pressure levels further demonstrated that Defendant REDDI's mistreatment and harassment were creating real, immediate, and tangible risks of life-threatening complications.

28. Plaintiff reported the harassment to Defendant PVHMC. Defendant PVHMC responded to Plaintiff that "she was needed in her department," that "her manager was entitled to voice concerns," and that Plaintiff should return to work. Defendant PVHMC did not offer to conduct an investigation, and Defendant PVHMC did not offer to protect Plaintiff. Defendant PVHMC's words and actions communicated that it cared not a whit for its disabled employee or the unlawful harassment that was happening within the Hospital.

29. On April 2, 2019, while on medical leave, Plaintiff contacted Defendant PVHMC to request that Defendant PVHMC begin engaging in the interactive process. Plaintiff requested, amongst other accommodations, that Defendant PVHMC conduct an investigation.

30. On April 3, 2019, Defendant PVHMC responded that Plaintiff should focus on getting better, and that Defendant PVHMC would follow up on the interactive process request *after Plaintiff returned to work*. Plaintiff was put in the situation where PVHMC refused to engage in the interactive process unless and until Plaintiff subjected herself to a work environment that posed real and immediate risks of injury or death.

31. On April 10, 2019, Counsel for Rios contacted Defendant PVHMC demanding that PVHMC begin engaging in the interactive process. Defendant PVHMC was asked to respond no later than April 30, 2019, whether Defendant

1   PVHMC would engage in the interactive process.

2       32.   Despite Plaintiff's request for a written response, On April 30,
3   2019, Defendant PVHMC's Counsel telephonically advised that Defendant
4   PVHMC could not participate in the interactive process because Plaintiff had
5   been placed on a complete leave without any qualifications on such leave.
6   Defendant PVHMC completely ignored and failed to address the fact that
7   Plaintiff *had requested the accommodation* and that Plaintiff had explicitly
8   explained that she would be risking *death* by attempting to return to work
9   prior to an accommodation.  Defendant PVHMC made no attempt to contact
10  Plaintiff's medical provider to request further information.  Defendant PVHMC
11  made no attempt to request further medical information from Plaintiff.

12      33.   On May 23, 2019, Plaintiff's Counsel wrote to Defendant PVHMC
13  objecting that Defendant had not attempted initiating the interactive process,
14  even though less than three weeks remained to Plaintiff's medical leave.

15      34.   Plaintiff then furnished an additional doctor's note extending
16  Plaintiff's leave due to Defendant's failure to accommodate and specifying that
17  Plaintiff "should not be micromanage[d] if it is not related to her work" and
18  that psychological stress at work caused by micromanagement would
19  compound her existing disabilities.

20      35.   On May 30, 2019, Defendant PVHMC's Counsel advised that
21  Defendant would commence the interactive process no later than June 7,
22  2019.  Defendant failed to do so.

23                **FIRST, SECOND, AND THIRD CAUSES OF ACTION**
24           **UNLAWFUL RETALIATION AGAINST FMLA-PROTECTED**
25          **CONDUCT; CFRA-PROTECTED CONDUCT; AND CALIFORNIA**
26                 **WHISTLEBLOWER RETALIATION**
27           **By Plaintiff, against Defendants PVHMC and REDDI**

28

**and Does 1 through 20**

36.    Plaintiff reincorporates all preceding paragraphs as though fully set-forth herein.

37.    Defendant PVHMC was Plaintiff's employer, and Defendant PVHMC employed more than fifty employees.

38.    Defendant REDDI was Plaintiff's manager.

39.    In or about August 2017, Defendants retaliated against Plaintiff for engaging in the protected activity of reporting her disability and retaliated against Plaintiff for engaging in the protected activity of making internal complaints about a manager's attempts to create a false disciplinary file.

40.    In August 2017, Plaintiff went out on pre-scheduled paid vacation for the birth of her first granddaughter.  Immediately upon Plaintiff's return, Plaintiff's immediate manager, Defendant REDDI, summoned Plaintiff into her office and made false accusations that Plaintiff had made mistakes in patient registrations.  Defendant REDDI informed Plaintiffs that she planned to give a written warning against Plaintiff without following the pre-warning counseling procedures that the Hospital ordinarily utilized.  Plaintiff informed Defendant REDDI that the latter's accusations were baseless, and Plaintiff challenged Defendant REDDI to show a single record in the Hospital's file system that corroborated Defendant's accusations.  Defendant REDDI was unable to do so.

41.    Defendant REDDI's actions caused Plaintiff extreme stress.  Plaintiff was so concerned by Defendant REDDI's libel, that Plaintiff requested a meeting with an administrative Vice President, Defendant CORNELL.  Defendant CORNELL scheduled a meeting for the following day.

42.    At that meeting, Plaintiff notified CORNELL that Plaintiff had a disabling condition, and that the disabling condition was stress-sensitive and

could flare up because of stress.  CORNELL expressed sympathy and expressed that she was familiar with the disabling condition because some of CORNELL's personal acquaintances had the same condition.

43.    CORNELL informed Plaintiff that she would look into the issue and then get back to Plaintiff.

44.    In violation of "STEP 2" of the "Grievance Procedure" provided for in PVHMC's Associate Handbook, CORNELL never followed up with Plaintiff.

45.    Immediately after Plaintiff's meeting with CORNELL, Defendant REDDI's demeanor towards Plaintiff entirely changed.  After that time, Defendant REDDI would jab her finger in Plaintiff's face when speaking to Plaintiff and Defendant REDDI would repeatedly yell at Plaintiff in front of Plaintiff's co-workers.  Plaintiff never witnessed Defendant REDDI yell at any other worker at the Oncology Hematology department, other than one other instance.  Defendant REDDI ceased greeting Plaintiff, stopped addressing Plaintiff by name, and began cutting Plaintiff off when Plaintiff attempted speaking in department meetings.

46.    Shortly thereafter, Plaintiff suffered an extreme and life-threatening medical condition that, on information and belief, was caused directly by Defendants' harassment and the stress caused thereby.

47.    As a result of said extreme and life-threatening medical condition, Plaintiff had to take a four-month FMLA leave.

48.    Plaintiff was eligible for such FMLA and/or CFRA leave.

49.    Immediately upon returning from her FMLA leave, Defendants retaliated against Plaintiff for taking that leave.  On the first day of Plaintiff's return, Defendant REDDI cruelly changed Plaintiff's job to the most difficult and labor-intensive position that Plaintiff was qualified to perform within that department.  Defendant REDDI did so despite REDDI's actual knowledge of

the seriousness and gravity of the medical condition that Plaintiff was returning from.

50.     Thereafter, Defendants retaliated again against Plaintiff for taking FMLA leave.  In December 2018, Plaintiff took FMLA leave for necessary surgery.  Plaintiff provided three-weeks' notice prior to the surgery.

51.     Plaintiff was eligible for such FMLA and/or CFRA leave.

52.     Defendant REDDI humiliated and singled Plaintiff out prior to Plaintiff's going on leave.  Furthermore, upon Plaintiff's return, on the first day of Plaintiff's work, Defendant REDDI took away Plaintiff's earlier lunch break, and forced Plaintiff to accept a later lunch break.  Defendant REDDI also told Plaintiff at that time:  "I cannot stop you from taking your 10-minute breaks, but you need to go to the bathroom during your breaks."  Defendant REDDI told Plaintiff she would need to turn in daily reports, which was something that Plaintiff had never been required to do before her leave.  Defendant REDDI began helicoptering over Plaintiff and berated Plaintiff in a manner that made it clear that Plaintiff was being singled out for such treatment.

53.     Plaintiff was harmed by Defendant's violations of California *Labor Code* § 1102.5, the CFRA, and the FMLA, including, without limitation, when Plaintiff suffered additional and severe medical conditions that were caused by and/or contributed to the ongoing stressful and retaliatory environment caused by Defendants' unlawfully retaliatory conduct; which damages are in an amount to be proven at trial, but no less than $2,500,000.00.

54.     Defendant's violations of California *Labor Code* § 1102.5, the CFRA, and the FMLA, was intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's rights and constituted an intentional violation of Plaintiffs' federally-protected rights and state-protected right, perpetrated with malice and/or reckless indifference.

Plaintiffs' malice and reckless indifference is well demonstrated, amongst many other facts, by the fact that a docket search of labor-related claims against Defendant PVHMC demonstrates that the overwhelming majority of those cases concern disability discrimination and failure to accommodate. *See Sauni v. PVHMC et al.,* LASC BC685685; *Hueston v. PVHMC et al.,* LASC BC618327; *Easton v. PVHMC et al.,* LASC BC575068; *Prieto v. PVHMC et al.,* LASC BC694743; *Fuentes v. PVHMC et al.,* LASC BC676562; *Mcnair v. PVHMC et al.,* LASC BC689897.  Furthermore, a recent DFEH response to Plaintiff's PRA request demonstrates that since January 1, 2017, seven (7) DFEH complaints have been filed against Defendant PVHMC, representing more than a 300% increase as compared with the preceding three-year period.  Of the seven (7) DFEH complaints filed against Defendant PVHMC since January 1, 2017, six charge disability harassment, disability discrimination, or a failure to engage in the interactive process.  Such conduct subjects Defendants to punitive damages in amount to be proven at trial, but no less than $1,000,000.00.

## FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT

### By Plaintiff, against Defendants PVHMC and REDDI and Does 1 through 20

55.   Plaintiff reincorporates all preceding paragraphs as though fully set-forth herein.

56.   Defendant PVHMC, on information and belief, is a federal TRICARE provider.  Defendant PVHMC, on information and belief, holds contracts with the California DHCS.  Defendant PVHMC, on information and belief, holds contracts with the County of Los Angeles.

57.   Pursuant to such contracts, Defendant PVHMC is contractually

obligated to adopt and implement nondiscrimination policies and/or to adopt and implement affirmative action policies and/or to appoint an affirmative action coordinator and/or nondiscrimination coordinator and/or disability coordinator.  (*See* 29 U.S.C. § 794; L.A.C. Code § 4.32.010 *et seq.*; 2. C.C.R. § 11105.)

58.   Plaintiff is disabled, and, as such, Plaintiff is a third-party beneficiary of said contracts, warranting that Defendant PVHMC will not discriminate against disabled persons and/or warranting that Defendant PVHMC will adopt affirmative action policies and/or warranting that PVHMC will appoint and give adequate authority to an affirmative action coordinator and/or a nondiscrimination coordinator and/or a disability coordinator.

59.   In breach of said contracts, Defendant PVHMC discriminated against Plaintiff because of her disability and/or failed to implement said policies in the required manner, thereby depriving Plaintiff the fruits of the contract.

60.   Plaintiff was harmed through and due to the above-described disability discrimination.

61.   Said breaches were a substantial factor in causing Plaintiff's harm, including, without limitation, the life-threatening conditions inflicted on Plaintiff by the described breaches; medical costs incurred due to the described breaches; back pay; front pay; and other damages.

62.   Plaintiff is entitled to a decree of Specific Performance of said nondiscrimination contracts, as the terms of those contracts are sufficiently certain as to support specific enforcement; such terms are just and reasonable; and damages alone cannot sufficiently remedy the injury caused by Defendant's breach.

### FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION

## FAILURE TO ACCOMMODATE

### (FEHA/ADA/REHABILITATION ACT)

### By Plaintiff, against Defendants PVHMC and REDDI

### and Does 1 through 20

63.  Plaintiff reincorporates all preceding paragraphs as though fully set-forth herein.

64.  Defendant PVHMC was Plaintiff's employer, and Defendant PVHMC employed more than fifty employees.

65.  Defendant PVHMC accepts patients that are insured by TRICARE.

66.  Defendant REDDI was Plaintiff's manager.

67.  Defendant PVHMC knew that Plaintiff had a medical condition that limited a major life activity, because, amongst other matters, Plaintiff communicated to Defendant CORNELL, an administrative Vice President, the specifics of Plaintiff's disabling condition, and that the disabling condition was stress-sensitive and could flare up because of stress.  CORNELL expressed sympathy and expressed that she was familiar with the disabling condition because some of CORNELL'S personal acquaintances had the same condition. Plaintiff communicated to CORNELL that the targeted disparate treatment experienced by Plaintiff—specifically, Defendant REDDI's attempt to libel Plaintiff for nonexistent, trumped-up wrongdoings—was exacerbating her existing disability.

68.  Plaintiff could perform her essential job functions provided that Defendant made the reasonable accommodation of disallowing rude and offensive disparate treatment against Plaintiff—such as the disparate treatment of yelling at Plaintiff, cutting her off in meetings, refusing to address Plaintiff by name, helicoptering over Plaintiff, and other disparate treatment— which offensive and stressful treatment could not be reasonably tolerated by

Plaintiff, because that offensive and stressful treatment caused disabling flare-ups of Plaintiffs' existing medical disabilities and caused measurably harmful elevations to Plaintiff's blood pressure.

69.    After Plaintiff communicated to Cornell that the targeted disparate treatment experienced by Plaintiff—specifically, Defendant REDDI's attempt to discipline Plaintiff for nonexistent, trumped-up wrongdoings—was exacerbating her existing disability, Defendant PVHMC failed to engage in reasonable measures to accommodate Plaintiff.  To the contrary, Plaintiff was specifically targeted due to her attempts to seek an accommodation.

70.    Plaintiff was harmed by Defendant's violations of California *Government Code* §§ 12940 *et seq.*, including, without limitation, when Plaintiff suffered severe and life-threatening medical conditions that were caused by and/or contributed to the ongoing stressful and retaliatory environment caused by Defendants' failure to accommodate; in an amount to be proven at trial, but no less than $2,500,000.00.

71.    Defendant's violations of California *Government Code* §§ 12940 *et seq.*, 42 U.S.C. § 12111 *et seq.* and 29 U.S.C. §§ 793–794 was intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's rights and constituted an intentional violation of Plaintiffs' federally-protected rights and state-protected right, perpetrated with malice and/or reckless indifference.  Plaintiffs' malice and reckless indifference is well demonstrated, amongst many other facts, by the fact that after Plaintiff began seeking the interactive process, Defendant REDDI went through the medical oncology unit of Defendant PVHMC asking those employees whether they had been communicating with Plaintiff's attorneys.  The messaging conveyed by the conduct of having the "executioner" publicly ask employees whether they were communicating with the victim's attorneys demonstrates that not only do

Defendants care not the slightest about their obligations under the ADA, FEHA, and Defendant's various state, federal, and county contracts, but that Defendants further have no compunction about messaging all employees that assisting disabled co-employees will result in targeting and harassment; and Defendants overall have no compunction about creating a hostile environment against disabled employees.  Defendants' malice and reckless indifference is further demonstrated by the fact that a docket search of labor-related claims against Defendant PVHMC demonstrates that the overwhelming majority of those cases concern disability discrimination and failure to accommodate.  *See Sauni v. PVHMC et al.,* LASC BC685685; *Hueston v. PVHMC et al.,* LASC BC618327; *Easton v. PVHMC et al.,* LASC BC575068; *Prieto v. PVHMC et al.,* LASC BC694743; *Fuentes v. PVHMC et al.,* LASC BC676562; *Mcnair v. PVHMC et al.,* LASC BC689897.  Furthermore, a recent DFEH response to Plaintiff's PRA request demonstrates that since January 1, 2017, seven (7) DFEH complaints have been filed against Defendant PVHMC, representing more than a 300% increase as compared with the preceding three-year period.  Of the seven (7) DFEH complaints filed against Defendant PVHMC since January 1, 2017, six charge disability harassment, disability discrimination, or a failure to engage in the interactive process.   Defendants' malice and reckless indifference is further demonstrated by the fact that after two-months of foot dragging and correspondence with Plaintiff's Counsel, Defendant's finally promised to begin engaging in the interactive process before proceeding to breach that promise and deny the interactive process.  Such conduct subjects Defendants to punitive damages in amount no less than $300,000 for Defendants' wanton violations of 42 U.S.C. § 12111 *et seq.* and no less than an additional $1,000,000.00 for Defendants' wanton violations of California *Government Code* §§ 12940 *et seq.*

## EIGHTH, NINTH, AND TENTH CAUSES OF ACTION

## FAILURE TO TIMELY ENGAGE IN THE INTERACTICE PROCESS IN GOOD FAITH (FEHA/ADA/REHABILITATION ACT)

### By Plaintiff, against Defendants PVHMC and REDDI and Does 1 through 20

72.    Plaintiff reincorporates all preceding paragraphs as though fully set-forth herein.

73.    Defendant PVHMC was Plaintiff's employer, and Defendant PVHMC employed more than fifty employees.

74.    Defendant PVHMC accepts patients insured through TRICARE.

75.    Defendant REDDI was Plaintiff's manager.

76.    In March 2019, Defendant REDDI summoned Plaintiff to a meeting wherein Defendant REDDI began making false and fabricated accusations against Plaintiff, in a manner that aggravated Plaintiff's disabling condition to the extent that Plaintiff was physically unable to walk the next day.  Plaintiff's recorded blood-pressure levels demonstrated that Defendant REDDI's mistreatment and harassment were creating real, immediate, and tangible risks of life-threatening complications.

77.    Plaintiff reported the harassment to Defendant PVHMC. Defendant PVHMC advised Plaintiff that "she was needed in her department," that "her manager was entitled to voice concerns," and that Plaintiff should return to work.  Defendant PVHMC did not offer to conduct an investigation, and Defendant PVHMC did not offer to protect Plaintiff.

78.    On April 2, 2019, while on medical leave, Plaintiff contacted Defendant PVHMC requesting that Defendant PVHMC begin engaging in the interactive process.  Plaintiff requested, amongst other accommodations, that Defendant PVHMC conduct an investigation.

79.    On April 3, 2019, Defendant PVHMC responded that Plaintiff should focus on getting better, and that Defendant PVHMC would follow up on the interactive process request *after Plaintiff returned to work*. Plaintiff was put in the situation where PVHMC refused to engage in the interactive process unless and until Plaintiff subjected herself to a work environment that created real and immediate risks of injury and death.

80.    On April 10, 2019, Counsel for Rios contacted Defendant PVHMC demanding that PVHMC begin engaging in the interactive process. Defendant PVHMC was asked to respond no later than April 30, 2019, whether Defendant PVHMC would engage in the interactive process.

81.    Despite Plaintiff's request for a written response, on April 30, 2019, Defendant PVHMC's Counsel telephonically advised that Defendant PVHMC could not participate in the interactive process because Plaintiff had been placed on a complete leave without any qualifications on such leave. Defendant PVHMC completely ignored and failed to address the fact that Plaintiff *had requested the accommodation* and that Plaintiff had explicitly explained that she would be risking life-threatening complications in attempting to return to work prior to an accommodation. Defendant PVHMC made no attempt to contact Plaintiff's medical provider to request further information. Defendant PVHMC made no attempt to request further medical information from Plaintiff.

82.    On May 23, 2019, Plaintiff's Counsel wrote to Defendant PVHMC objecting that Defendant had not attempted initiating the interactive process, even though less than three weeks remained to Plaintiff's medical leave.

83.    Plaintiff's Counsel furnished an additional doctor's note extending Plaintiff's leave *due to the failure to accommodate* and specifying that Plaintiff "should not be micromanage[d] if it is not related to her work" and that

psychological stress at work caused by micromanagement would compound her existing disabilities.

84.   On May 30, 2019, Defendant PVHMC's Counsel advised that Defendant would commence the interactive process no later than June 7, 2019.  Defendant failed to do so.

85.   To date, Defendant PVHMC has not provided any proposed accommodation.

86.   Plaintiff could be reasonably accommodated by, amongst other matters, simply transferring her to another position where she would not be retaliated against.

87.   Defendant's violations of California *Government Code* §§ 12940 *et seq.*, 42 U.S.C. § 12111 *et seq.* and 29 U.S.C. §§ 793–794 was intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's rights and constituted an intentional violation of Plaintiffs' federally-protected rights and state-protected right, perpetrated with malice and/or reckless indifference.  Plaintiffs' malice and reckless indifference is well demonstrated, amongst many other facts, by the fact that after Plaintiff began seeking the interactive process, Defendant REDDI went through the medical oncology unit of Defendant PVHMC asking employees whether they had been communicating with Plaintiff's attorneys.  The messaging conveyed by the conduct of having the "executioner" publicly ask employees whether they were communicating with the victim's attorneys demonstrates that not only do Defendants care not the slightest about their obligations under the ADA, FEHA, and Defendant's various state, federal, and county contracts, but that Defendants further have no compunction about messaging all employees that assisting disabled co-employees will result in targeting and harassment; and Defendants overall have no compunction about creating a hostile environment

against disabled employees. Defendants' malice and reckless indifference is further demonstrated by the fact that a docket search of labor-related claims against Defendant PVHMC demonstrates that the overwhelming majority of those cases concern disability discrimination and failure to accommodate. *See Sauni v. PVHMC et al.,* LASC BC685685; *Hueston v. PVHMC et al.,* LASC BC618327; *Easton v. PVHMC et al.,* LASC BC575068; *Prieto v. PVHMC et al.,* LASC BC694743; *Fuentes v. PVHMC et al.,* LASC BC676562; *Mcnair v. PVHMC et al.,* LASC BC689897. Furthermore, a recent DFEH response to Plaintiff's PRA request demonstrates that since January 1, 2017, seven (7) DFEH complaints have been filed against Defendant PVHMC, representing more than a 300% increase as compared with the preceding three-year period. Of the seven (7) DFEH complaints filed against Defendant PVHMC since January 1, 2017, six charge disability harassment, disability discrimination, or a failure to engage in the interactive process. Defendants' malice and reckless indifference is further demonstrated by the fact that after two-months of foot dragging and correspondence with Plaintiff's Counsel, Defendant's finally promised to begin engaging in the interactive process and then breached that promise and failed to do so. Such conduct subjects Defendants to punitive damages in amount no less than $300,000 for Defendants' wanton violations of 42 U.S.C. § 12111 *et seq.* and no less than an additional $1,000,000.00 for Defendants' wanton violations of California *Government Code* §§ 12940 *et seq.*

## ELEVNTH CAUSE OF ACTION

## FAILURE TO RESTRAIN HARASSMENT

## By Plaintiff, against Defendant CORNELL

## and Does 1 through 20

88. Plaintiff reincorporates all preceding paragraphs as though fully set-forth herein.

89.   Defendant PVHMC was Plaintiff's employer, and Defendant PVHMC employed more than five employees.

90.   Plaintiff communicated to Defendant CORNELL—an administrative Vice President—the specifics of Plaintiff's disabling condition, and that the disabling condition was stress-sensitive and could flare up because of stress.  CORNELL expressed sympathy and expressed that she was familiar with the disabling condition because some of CORNELL's personal acquaintances had the same condition.  Plaintiff communicated to CORNELL that the targeted disparate treatment experienced by Plaintiff—specifically, Defendant REDDI's attempt to discipline Plaintiff for nonexistent, trumped-up wrongdoings—was exacerbating her existing disability.

91.   In violation of "STEP 2" of the "Grievance Procedure" provided for in PVHMC's Associate Handbook, CORNELL never followed up with Plaintiff. Plaintiff received no further response or information, whether written, verbal, or otherwise.

92.   Immediately after Plaintiff's meeting with CORNELL, Defendant REDDI's demeanor towards Plaintiff entirely changed.   After that time, Defendant REDDI would jab her finger in Plaintiff's face when speaking to Plaintiff and Defendant REDDI would repeatedly yell at Plaintiff in front of her co-workers.   Plaintiff never witnessed Defendant REDDI yell at any other worker at the Oncology Hematology department, other than one other instance.  Defendant REDDI ceased greeting Plaintiff, stopped addressing Plaintiff by name, and began cutting Plaintiff off when Plaintiff attempted speaking in department meetings.

93.   Defendants' conduct informed Plaintiff that Plaintiff could not engage in protective activity, and that attempting to engage in protected activity would only be punished.  Plaintiff attempted informing Defendant

PVHMC that her disability was being aggravated, and Plaintiff received no assistance, no follow-up, no investigation, and only harassment and retribution.

94.    Plaintiff was harmed by Defendant's failure to engage in protective supervision as required under California *Government Code* §§ 12940 *et seq.*, including, without limitation, when Plaintiff suffered severe and life-threatening medical conditions that were caused by and/or contributed to the ongoing stressful and retaliatory environment caused by Defendants' failure to accommodate; in an amount to be proven at trial, but no less than $2,500,000.00.

///

///

<u>**TWELVTH CAUSE OF ACTION**</u>

**UCL — § 17200**

<u>**By Plaintiff, against all Defendants**</u>

<u>**including Does 1 through 20**</u>

95.    Plaintiff reincorporates all preceding paragraphs as though fully set-forth herein.

96.    Defendants, and Does 1 through 20, and each of them, have engaged and continue to engage in unfair and/or unlawful business practices in California in violation of California *Business and Professions Code* §§ 17200 *et seq.*, by failing to accommodate as required under the ADA, FEHA, and the Rehabilitation Act; by failing to engage in the interactive process as required under the ADA, FEHA, and the Rehabilitation Act; by failing to prevent retaliation and discrimination; and by retaliating against Plaintiff for exercising her rights under the FMLA and the CFRA; and by doing such acts in violation of Defendant PVHMC's contracts with the California DHCS and

County of Los Angeles, and the obligations imposed by consequence of being a TRICARE provider, which obligations Defendant PVHMC violated while continuing to improperly accept the benefits of those contracts and payments under those contracts and through TRICARE.

97.   Defendants' utilization of these unfair and/or unlawful business practices has deprived Plaintiff of compensation to which she is legally entitled, which constitutes unfair and/or unlawful competition as such practices have procured Defendants an unfair advantage over Defendants' competitors who have been and/or are currently employing workers and attempting to do so in honest compliance with applicable antidiscrimination laws and which engage in good faith and honest attempts to shoulder their legal obligations and costs in accommodating disabled employees and in providing FMLA and CFRA rights without any retaliation.

98.   Defendant's utilization of these unfair and/or unlawful business practices constitutes a public nuisance.

99.   Plaintiff is a victim of Defendant's unfair and/or unlawful conduct alleged herein, and Plaintiff seeks full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants pursuant to *Business and Professions Code* §§ 17203 and 17208.

100.  Plaintiff is entitled to an injunction ordering Defendant PVHMC to comply with its obligations and burdens under 2 C.C.R. §§ 11105.

101.  Defendant was compelled to retain the services of counsel to file this court action to protect his interests and those of the public, to obtain injunctive relief on behalf of the public, and to enforce important rights affecting the public interest.  Cross-complainant has thereby incurred the financial burden of attorneys' fees and costs, which he is entitled to recover under section 1021.5 of the *Code of Civil Procedure*.

## **PRAYER FOR RELIEF**

Plaintiff RIOS accordingly prays for the following relief against Defendant POMONA VALLEY HOSPITAL MEDICAL CENTER a California nonprofit corporation; Defendant Anitha REDDI, an individual; Defendant LEIGH CORNELL, an individual; and Does 1 through 20, inclusive:

    (1)   For all damages incurred, in such amount as proven at trial;

    (2)   For compensatory damages, in an amount no less than $2,500,000;

    (3)   For all special and consequential damages;

    (4)   For punitive damages, in an amount no less than $1,300,000;

    (5)   For all attorneys' fees incurred;

    (6)   For all costs of suit;

    (7)   For penalties, as authorized by statute;

    (8)   For prejudgment and postjudgment interest;

    (9)   For injunctive relief;

    (10)  For such other and further relief as the Court deems just and proper.

Dated: June 24, 2019        **BLADY WORKFORCE LAW GROUP APC**

                                  /s/ Benjamin Blady
                              I. Benjamin J. Blady
                              Attorneys for Plaintiff Michelle RIOS

Dated: June 24, 2019        **LESCHES LAW**

                                  /s/ Levi Lesches
                              Levi Lesches
                              Attorneys for Plaintiff Michelle RIOS

— **JURY DEMAND** —

Plaintiff hereby demands a jury trial with respect to all issues triable by jury.

Dated: June 24, 2019                    **BLADY WORKFORCE LAW GROUP APC**


                                        __/s/ Benjamin Blady_____
                                        I. Benjamin J. Blady
                                        Attorneys for Plaintiff Michelle RIOS

Dated: June 24, 2019                    **LESCHES LAW**


                                        __/s/ Levi Lesches_____
                                        Levi Lesches
                                        Attorneys for Plaintiff Michelle RIOS

COMPLAINT FOR DAMAGES — JURY TRIAL DEMANDED